IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, et al.,

        Plaintiffs,

v.              CIVIL  ACTION  NO.  3:03-2281

COLONEL DANA R. HURST,
District Engineer, U.S. Army Corps
of Engineers, Huntington District, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This action is before the Court after a transfer ordered by the Chief Judge.  It was originally filed in 2003 by the plaintiffs Ohio Valley Environmental Coalition, Coal River Mountain Watch, and Natural Resources Defense Counsel ("Plaintiffs").  In their original, amended and supplemental complaints, Plaintiffs alleged that the United States Army Corps of Engineers' (the "Corps") decision to issue various mining discharge permits, and authorizations thereunder, violated pertinent provisions both of the Clean Water Act (the "CWA"), 33 U.S.C. § 1344, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*, and was arbitrary and capricious agency conduct under the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 701, 706.

Plaintiffs now allege that they have succeeded on many of their claims.  Consequently, they seek an award of attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504, 28 U.S.C. § 2412(d)(1)(A).  Currently pending is Plaintiffs' motion for an award of fees and expenses. [Doc. 248] For the reasons that follow, the Court **GRANTS** the motion in part and

**DENIES** it in part.

## I.    Factual and Procedural Background

The CWA authorizes the Corps to regulate discharges of dredged and fill material into the waters of the United States.  *See* 33 U.S.C. § 1251(a).  In accordance with this general dictate, the CWA enables the Corps to issue "general permits" which allow categories of filling activities to go forward without the Corps' extensive involvement if it "determines that the activities . . . are similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effect on the environment." *See id.* § 1344(e)(1).  These general permits must be issued in compliance with the § 404(b)(1) guidelines published by the EPA (the "Guidelines").  *See, e.g.*, 40 C.F.R. §§ 230.10-11, 230.7(b)(1).

In the original complaint, Plaintiffs presented a facial challenge to a general nationwide permit issued by the Corps for the disposal of waste rock and dirt and other substances associated with coal mining activities (hereinafter, the "2002 NWP 21").   Plaintiffs further challenged individual authorizations by the Corps under the 2002 NWP 21 for discharges in southern West Virginia.

The 2002 NWP 21 became effective on March 18, 2002.  *See* 67 Fed. Reg. 2020, 2020. Generally, Plaintiffs argued that the 2002 NWP 21, and the individual permits distributed thereunder, were issued arbitrarily and capriciously, and in violation of the requirements embodied in NEPA, the CWA, and the Guidelines.  Most notably, Plaintiffs argued that the Corps failed to adequately conduct all appropriate environmental impact analyses in issuing the permits.  Further, Plaintiffs argued that the Corps' failure to prepare an Environmental Impact Statement ("EIS") before it issued the 2002 NWP 21 was contrary to the requirements of NEPA.

In the original complaint, Plaintiffs sought various forms of relief, including requests that the Court: (1) issue a declaratory judgment that the Corps violated its statutory and regulatory duties; (2) enjoin the Corps from authorizing further disposal of mining rock and dirt into valley fills associated with surface mines or other discharges of mining waste into adjacent waters; (3) enjoin the Corps from authorizing any other discharges associated with any individual mining permits issued under the 2002 NWP 21; (4) enjoin the Corps from authorizing, pursuant to the 2002 NWP 21, discharges that were associated with surface mining activities for which the Corps did not require sufficient mitigation; and (5) enjoin the Corps and other applicable agencies from authorizing further discharges pursuant to the NWP 21 until they completed an EIS that complied with NEPA.  *See* Pls.' Compl. 18-20, No. 1.

On April 26, 2004, Judge Goodwin granted Plaintiffs' motion for a preliminary injunction, enjoining the Corps from authorizing a permit for Green Valley Coal Company to discharge mining waste pursuant to the 2002 NWP 21 at its Blue Branch mine.  *See OVEC v. Bulen*, 315 F. Supp. 2d 821, 831 (S.D. W. Va. 2004).[1]  Thereafter, in July of 2004, Judge Goodwin granted Plaintiffs' first motion for summary judgment on many of the claims alleging that the 2002 NWP 21 violated the CWA because the Corps failed to conduct required pre-issuance minimal impact review procedures.  *See OVEC v. Bulen*, 410 F. Supp. 2d 450, 465-67, 471 (S.D. W. Va. 2004).  The Fourth Circuit reversed that decision, however, finding in part that the Corps did in fact make all appropriate pre-issuance minimal-impact determinations required by the CWA, and that the permit itself was not legally invalid under the statute to the extent that it permitted additional post-issuance considerations

---

[1] This injunction was made permanent in August of 2004.  *See OVEC v. Bulen*, No. 3:03-2281, 2004 U.S. Dist. LEXIS 16078, at *11-12 (S.D. W. Va. Aug. 13, 2004).

made by the Corps. *See OVEC v. Bulen*, 429 F.3d 493, 500-04 (4th Cir. 2005). The matter was consequently remanded with instructions to proceed in a manner not inconsistent with the opinion. *Id.* at 505.

On March 10, 2006, Plaintiffs filed a renewed motion for summary judgment on their remaining claims not addressed by the Fourth Circuit. Namely, they claimed that the Corps did not consider the nationwide and comprehensive environmental effects of the 2002 NWP 21, and arbitrarily failed to place a limit on the filling of perennial streams. Further, they claimed that the Corps' environmental impact determinations under the 2002 NWP 21 were unreasonable under the CWA and NEPA.

During the extensive interim briefing process, the 2002 NWP 21 became inoperable due to its natural expiration date of March 19, 2007. In March of 2009, Judge Goodwin determined that Plaintiffs' challenge to the minimal effects determinations for the then-expired 2002 NWP 21 was therefore moot. However, after the 2002 NWP 21 expired, the Corps chose to issue the 2007 NWP 21 after proceedings based upon a relatively new administrative record. Plaintiffs then asserted many of the same challenges against the 2007 NWP 21 as they did against the 2002 NWP 21. For that reason, Judge Goodwin addressed the similar claims, and found the traditional justiciability thresholds of standing and ripeness satisfied. *See OVEC v. Hurst*, 604 F. Supp. 2d 860, 873-76 (S.D. W. Va. 2009). Further, he granted Plaintiffs' motion for summary judgment, holding that the Corps' minimal cumulative effects determinations for the 2007 NWP 21 were arbitrary and capricious under NEPA and the CWA. *See id.* at 883-88, 895-96, 897-900. However, he rejected Plaintiffs' other challenges to the 2007 NWP 21. Nonetheless, Judge Goodwin vacated the 2007 NWP 21, and enjoined the Corps from issuing further authorizations in this district. The Corps and various coal

company intervenors appealed Judge Goodwin's decision.[2]

On June 11, 2009, the Corps, the EPA, and the Department of the Interior entered into a Memorandum of Understanding Implementing the Interagency Action Plan on Appalachian Surface Coal Mining (the "MOU").  The MOU directs the Corps, within 30 days of the MOU's creation, to "issue a public notice pursuant to 33 C.F.R. § 330.5 proposing to modify the Nationwide Permit (NWP) 21 to preclude its use to authorize the discharge of fill material into streams . . . in the Appalachian Region, and . . . seek public comment on the proposed action."  *See* Mem. of Understanding, at 3, *available at* http://water.epa.gov/lawsregs/guidance/wetlands/upload/2009_06 _10_wetlands_pdf_Final_MTM_MOU_6-11-09.pdf.  In accordance with the MOU, on July 15, 2009, the Corps issued a notice in the Federal Register essentially proposing a suspension of the 2007 NWP 21.  *See* 74 Fed. Reg. 34,311, 34,313.  Thereafter, the Corps voluntarily dismissed its appeal on August 26, 2010.  The intervenors' appeal was voluntarily dismissed on January 31, 2011 after the Fourth Circuit denied their motion to vacate the district court's judgment on the grounds that the Corps' suspension of the NWP 21 rendered the matter moot.

Plaintiffs claim, based on the way this matter has developed, that they are prevailing parties and are entitled to an award of fees and expenses under the EAJA.  *See* 28 U.S.C. § 2412(d)(1)(A).

## II.    Discussion

The EAJA requires the court to award attorneys' fees and expenses to a prevailing party in an action by or against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  *Id*.  In order for a

---

[2] The intervenors filed a notice of appeal from the district court's judgment on May 28, 2009.  The United States filed a separate notice of appeal on June 10, 2009.

-5-

plaintiff to recover under the EAJA, he must establish that: (1) the fee application is timely; (2) he was a "prevailing party"; (3) the government's position was without "substantial justification"; and (4) no "special circumstances" warrant the denial of fees. *See Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 137 n. 2 (4th Cir. 1993).

Plaintiffs contend that they satisfy their burden as to each element, and request a total of $173,187.13 for the time spent and expenses incurred in litigating this matter. The Corps alleges that Plaintiffs fail to make a showing on the first three elements. Moreover, it also argues that, even if Plaintiffs are entitled to an award of fees and expenses, they cannot recover the full amount requested. The Court addresses the relevant merits of each argument in turn.

### A.    Entitlement to Fees and Expenses

### 1.    Timeliness

The Corps first argues that Plaintiffs' motion is not timely. Under the EAJA, a claim for attorneys' fees and expenses must be brought within thirty days of entry of a final judgment in the action. 28 U.S.C. § 2412(d)(1)(B). While the thirty-day requirement is not a prerequisite to the district court's exercise of federal subject matter jurisdiction, *see Scarborough v. Principi*, 541 U.S. 401, 413 (2004), the "EAJA represents a waiver of the federal government's immunity from suits for attorney's fees and . . . must be construed strictly." *Clifton v. Heckler*, 755 F.2d 1138, 1144 (5th Cir. 1985). As already noted, the Corps filed an appeal from the 2004 judgment, and the Fourth Circuit reversed and remanded for further proceedings. It is Judge Goodwin's second opinion issued in 2009 that finally ended this litigation on the merits.

The resolution of this issue depends inherently on the Court's interpretation of what constitutes a "final judgment" as that phrase is defined by § 2412(d)(1)(B). Congress has not

extensively defined the phrase in the statute. *See Poff v. Gorsuch*, 636 F. Supp. 710, 712-13 (W.D. Va. 1986). The Corps contends that Plaintiffs incorrectly calculate the deadline for filing their EAJA application from January 31, 2011, the date the intervenors' appeal was dismissed. Instead, it reasons that, because this fee request is brought under the EAJA, Plaintiffs had only thirty days from the date the Corps voluntarily dismissal its appeal on August 26, 2010.

As an initial matter, the EAJA provides that a "final judgment" must be "final and not appealable." 28 U.S.C. § 2412(d)(2)(G). The Corps' appeal was dismissed pursuant to Federal Rule of Appellate Procedure 42(b). Some courts have held in similar contexts that a uniform rule on whether a voluntarily dismissal is "final" should be based on the applicable statutory period and the parties' correlative rights to file further appeals. *See, e.g.*, *Impresa Construzioni Geom. Domenico Garufi v. United States*, 531 F.3d 1367, 1372 (Fed. Cir. 2008) (noting that, for EAJA purposes, further appeal rights are presumed unless disclaimed in a dismissal order). Generally, these courts have reasoned that a judgment entered upon a voluntary dismissal in the court of appeals does not become final until the time for filing a valid petition for certiorari expires, regardless of the likelihood of the Supreme Court actually granting the petition. *See id.*; *Sabhari v. Frazier*, No. 08-2939, 2010 U.S. App. LEXIS 15463, at *4-5 (8th Cir. July 26, 2010). Under Rule 13.1 of the Rules of the Supreme Court, parties have ninety days in which to file an appeal from the entry of a judgment in the court of appeals. S. Ct. Rule 13.1. The Court in this case need not, however, determine whether either party had a right to file a petition for certiorari, and likewise whether Plaintiffs had more than thirty days in which to file an EAJA request for attorneys' fees. If the Corps is correct that Plaintiffs had to file within the statutory time frame after it voluntarily dismissed its appeal on August 26, 2010, Plaintiffs' current EAJA petition would be untimely under

any mode of analysis.

Therefore, Plaintiffs' petition for fees is timely only if the Court may calculate the time for the filing of the EAJA claim from January 31, 2011, the date the intervenors' appeal was dismissed. The Corps contends that the August 26, 2010 voluntary dismissal—and subsequent Fourth Circuit mandate—terminated the action as against the Corps.   Plaintiffs alternatively contend that all appeals were abandoned when they were dismissed by *all defendants*, and because the intervenors' interests were aligned with the Corps', the matter was still ongoing long after the Corps voluntarily dismissed its appeal.

The weight of the authorities supports Plaintiffs' position.   The Supreme Court has previously stated that "a 'final judgment' for purposes of 28 U. S. C. § 2412(d)(1)(B) means a judgment rendered by a court that terminates the civil action for which EAJA fees may be received." *See Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991).  "Final judgment," in this context, implies "'a judgment the time to appeal which has expired for all parties.'"  *Id.* (quoting and discussing H.R. Rep. No. 98-992, at 14 (1984)).   Therefore, the Court believes it reasonable to conclude that a judgment is final for the purposes of the EAJA's thirty-day limitations period when the appeals process is complete for *all parties*.

In this case, the intervenors requested that the Fourth Circuit both find that the Corps' voluntary dismissal and decision to suspend the NWP 21 had mooted the appeals, and vacate Plaintiffs' favorable judgment. The Fourth Circuit denied this request, and the appeal was thereafter voluntarily dismissed.  Thus, the intervenors chose not to pursue the appeal on the merits despite the fact that they could have done so.  If they had, the Fourth Circuit could have conceivably reversed Judge Goodwin's Order.  This Court could not have determined whether Plaintiffs were prevailing

-8-

parties until the action was finalized because there was still a pending appeal.

The Court agrees with Plaintiffs that the Corps' argument could create a "trap for the unwary resulting in the unwarranted denial of fees." H.R. Rep. No. 99-120, at 7 (1985). Furthermore, it could lead to a bizarre result where the government could be forced to pay fees, and then subsequently petition for their recovery in the event a prevailing parties' favorable result is overturned on appeal via the arguments of an intervenor. The Court need not infuse further confusion into the already complex EAJA attorneys' fees litigation process. For that reason, the Court finds that "final judgment" under § 2412(d)(1)(B) means the time when the appeals process for all parties who have a capacity to alter the judgment entered by the district court has expired. In this case, the thirty-day clock did not begin running until all appeals were finalized on January 31, 2011. Plaintiffs filed their petition in a timely fashion twenty-nine days later on March 1, 2011.

### 2. **Prevailing Party**

Under the so-called "American Rule," parties generally bear their own fees and expenses, unless a statute expressly provides otherwise. *See Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001). The EAJA provides a statutory exception permitting the court to award "to a *prevailing party* other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). To be a "prevailing party" one must have "'been awarded some relief by the court . . . [sufficient to] create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees.'" *See Goldstein v. Moatz*, 445 F.3d 747, 751 (4th Cir. 2006) (quoting *Buckhannon*, 532 U.S. at 603-04 and noting that it applies in the context of the EAJA). "[E]nforceable judgments

on the merits and court-ordered consent decrees" generally satisfy this standard.  *Buckhannon*, 532 U.S. at 604.  Succinctly stated in element form, "[t]o be a prevailing party, a party must show both a 'material alteration of the legal relationship of the parties,'" *Aronov v. Napolitano*, 562 F.3d 84, 89 (1st Cir. 2009) (citing *Buckhannon*, 532 U.S. at 604), and a "'judicial imprimatur on the change,'" *id.* (quoting *Buckhannon*, 532 U.S. at 605).

Plaintiffs' challenges to the 2002 NWP 21 were unavailing.  Even though Judge Goodwin granted Plaintiffs' first motion for summary judgment as to those permits, the Fourth Circuit reversed that decision, and remanded for consideration of the remaining arguments.  Following remand, the 2002 NWP 21 expired, and Plaintiffs' renewed motion for summary judgment was denied as moot.  The Corps chose to re-issue NWP 21 in 2007 after proceedings based upon a new administrative record.  As stated, Plaintiffs moved for summary judgment asserting many of the same challenges against the 2007 NWP 21 as they did against the 2002 NWP 21.  Judge Goodwin granted Plaintiffs the relief requested.

The Corps argues that Plaintiffs are not "prevailing parties" within the meaning of the EAJA despite the fact that they secured summary judgment on their claims that the Corps failed to issue an EIS and that its cumulative impacts analysis was inadequate, *see Hurst*, 604 F. Supp. 2d at 883-88, 895-96, 897-900, because the latter findings did not become final until the appeals were voluntarily dismissed.  Prior to that time, the Corps had announced its intent to suspend the 2007 NWP 21.  The Court disagrees with the Corps' position.

Plaintiffs obtained material changes in the parties' legal relationship on two encompassing issues.  First, Judge Goodwin granted injunctive relief against the issuance of the Green Valley permit.  Second, Plaintiffs reached their goal of vacating the 2007 NWP 21 permit, as Judge

Goodwin ordered that result in ruling in their favor on cross-motions for summary judgment.  *See id.* at 903.

Regarding whether the order was a "judicial imprimatur on the change," the Corps cites various cases which suggest that courts have routinely denied claims for attorneys' fees under the EAJA where the relief sought is obtained through means other than the plaintiff's lawsuit.  The Corps contends that its decision to voluntarily dismiss the appeal removed any judicial sanction from the ultimate suspension of the 2007 NWP 21.  The cases it cites, however, concern voluntary changes undertaken *before* the district court could enter judgment consistent with the relief requested by the plaintiffs.  *See, e.g.*, *Klamath Siskiyou Wildlands v. United States Bur. of Land Mgmt.*, 589 F.3d 1027, 1033-34 (9th Cir. 2009) (noting that environmental organizations challenging the Bureau of Land Management's decision to go forward with a timber sale were not "prevailing parties" under the EAJA because the agency withdrew its decision before an order from the district court was entered).  It is true, as the Corps contends, that the Supreme Court in *Buckhannon* rejected the so-called "catalyst theory" whereby a plaintiff could qualify as a prevailing party "where there is no judicially sanctioned change in the legal relationship of the parties."   532 U.S. at 605.[3] However, Plaintiffs have not relied on the catalyst theory in this case; instead, they obtained a judgment for precisely the relief they sought: invalidation of the 2007 NWP 21 and a permanent injunction against the Green Valley permit.  It is immaterial that, after a judgment order was entered in the district court, but prior to final disposition in the court of appeals, the Corps decided to abandon its appeal, and do that which Judge Goodwin effectively ordered in the first instance.

_____

[3] The Court notes, however, that the catalyst theory remains viable in other contexts.  *See, e.g.*, *OVEC v. Green Valley Coal Co.*, 511 F.3d 407, 414-15 (4th Cir. 2007) (noting that "*Buckhannon* does not bar catalyst recovery under a 'whenever appropriate' provision").

The Corps provides no support for its position that a post-judgment voluntary dismissal strips a successful plaintiff of its prevailing-party status. On the contrary, the authorities this Court has uncovered suggest that victories contextually similar to Plaintiffs' merit the application of "prevailing party" status. *See, e.g.*, *Palmetto Props., Inc. v. Cnty. of Dupage*, 375 F.3d 542, 549-50 (7th Cir. 2004) (finding that the plaintiff was a prevailing party where the district court awarded it partial summary judgment despite the fact that the court abstained from entering a final order formally closing the case); *OVEC v. Timmermeyer*, 363 F. Supp. 2d 849, 851-52 (S.D. W. Va. 2007) (finding that the plaintiff did not need the catalyst theory where it obtained injunctive relief that lasted through an appeal which was subsequently voluntarily dismissed). The plaintiffs in *Buckhannon* challenged a state law that was voluntarily repealed before the district court could issue a ruling on the merits. *See* 532 U.S. at 605. The Supreme Court's concern in rejecting the catalyst theory in that case was, in part, that it would have the effect of discouraging the government from voluntarily resolving cases *before* the district court decides a case on the merits. *See id.* at 608.

In enacting the EAJA, Congress was concerned that organizations could be deterred from challenging unreasonable governmental action "'because of the expense involved in securing the vindication of their rights in civil actions.'" *Astrue v. Ratliff*, 130 S. Ct. 2521, 2530-31 (2010) (Sotomayor, J., concurring) (citing § 202(a), 94 Stat. 2321, note following 5 U.S.C. § 504, p. 684 (Congressional Findings)). The Corps' position could permit the government to file an appeal from unfavorable judgments, only to voluntarily dismiss it after changing its own conduct in order to strip a party of its "prevailing" status. The Court cannot conceive that Congress intended that the benefit of the EAJA could be subject to procedural manipulation after a plaintiff in fact "receive[s] a

judgment on the merits" that materially alters the legal relationship between the parties.[4] *Buckhannon*, 532 U.S. at 605. Such a view would undercut the act's specific purpose. *See Comm'r v. Jean*, 496 U.S. 154, 163 (1990) (noting that the EAJA "eliminate[s] for the average person the financial disincentive to challenge unreasonable governmental actions.").

In this case, far more than a tailwind that was the catalyst in the Corps' change of position, Plaintiffs' lawsuit was the primary force in obtaining permanent injunctive relief. Judge Goodwin expressly ordered a repeal of the permit. *See OVEC v. Hurst*, 604 F. Supp. 2d at 902 ("Accordingly, I **VACATE** NWP 21 (2007) and **REMAND** this matter to the Corps for further proceedings consistent with this opinion."). The removal of the threat of an additional layer of review does not change the status of parties to an underlying proceeding that has already been resolved on the merits after the significant expenditure of judicial resources. For that reason, the Court **FINDS** that Plaintiffs are prevailing parties within the meaning of the EAJA.

### 3.    Substantial Justification

The EAJA authorizes an award of fees to the prevailing party unless the position of the government is "substantially justified." 28 U.S.C. § 2412(d)(1)(A). "The government's position is substantially justified if it is 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" *United States v. Cox*, 575 F.3d 352, 355 (4th Cir. 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)) (further quotations omitted). While the

_____

[4] Of course, the Court recognizes that a "'defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Buckhannon*, 532 U.S. at 609 (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). But the Court believes that the Corps' position would result in a further dilution of the EAJA's protections.

-13-

"government's position . . . would be substantially justified if [it] . . . does no more than rely on an arguably defensible administrative record," *Guthrie v. Schweiker*, 718 F.2d 104, 108 (4th Cir. 1983), it must be "more than merely undeserving of sanctions for frivolousness." *Pierce*, 487 U.S. at 566. It must have a reasonable foundation in law and fact. *See id.* at 565.

In this case, Plaintiffs argue that Judge Goodwin granted a preliminary injunction against the Corps' issuance of an NWP 21 authorization to Green Valley on the grounds that the grant was an abuse of the permit partly because the Corps relied on a plan to mitigate the filling of a stream by diverting another 8,000 feet of that stream. *Hurst*, 315 F. Supp. 2d at 829 ("On its face, the plan to 'mitigate' the destruction of 431 feet of a stream's small tributary by diverting 8,000 feet of the stream itself is ridiculous. The plan to mitigate so little damage with so much disruption to the watershed is as absurd as the statement by the officer in Vietnam that he had to 'destroy the village to save it.'"). Further, in issuing the 2007 NWP 21, Judge Goodwin found that the Corps violated NEPA and the CWA. Plaintiffs argue that these victories were obtained over the Corps' unreasonable belief in their positions. In that vein, they seize on Judge Goodwin's language stating "[the Court] is left with nothing but the Corps' unsupported belief in [its] conclusions." *Hurst*, 604 F. Supp. 2d at 894.

The Court emphasizes at the outset that the government's position may still be substantially justified even if it loses the case. *See Pierce*, 487 U.S. at 565, 569. The crux of the Corps' position in support of its cumulative impacts analysis—which Judge Goodwin of course found unreasonable—was that cumulative impacts would be minimal due to its proposed compensatory mitigation techniques. Those mitigation techniques included the Corps' adoption of a "case-by-case" approach whereby district engineers would follow a procedure to ensure that each individual

-14-

permit issued under the 2007 NWP 21 would have a minimal cumulative environmental impact.  *See* 72 Fed. Reg. 11,193.  Judge Goodwin concluded that the Corps did not provide any evidence that this process would be successful or that it would be adequately policed.  Further, he reasoned that the Corps failed to consider the continuing impact of past actions, and improperly relied upon regional assessments in its nationwide cumulative impact analysis.

The Court acknowledges the fact that the Fourth Circuit in *OVEC v. Aracoma Coal Co.*, 556 F.3d 177 (4th Cir. 2009) has held previously that the Corps may rely upon mitigation to reduce impacts of a project to minimal, and that it need not have substantial proof that the measures will succeed.  *See id.* at 205-06 (finding that the Corps' conclusion that compensatory mitigation would offset the adverse effects of fill activity was not arbitrary and capricious).  But the court in *Aracoma Coal*, while deferential to the Corps' expertise, did not simply rubber-stamp its proposed mitigation procedures.  *Id.* at 205.  Rather, it noted that the Corps' support for mitigation claims was "limited," and that the Corps had cited other examples of how the procedure could be successful.  In this case, Judge Goodwin found absolutely no support in the Corps' "bald assertions" of the potential for success in its compensatory mitigation program.  *See Hurst*, 604 F. Supp. 2d at 887, 901 (internal quotation marks omitted).  Rather, the mitigation procedures were generalized in description and unsupported by the Corps' own analysis under the applicable cumulative impact inquiries required by the CWA and NEPA.

The Corps also contends that, while Plaintiffs obtained an ultimate invalidation of the 2007 NWP 21, they lost on many of the other legal grounds.  As the Fourth Circuit has directed:

> [W]hen determining whether the government's position in a case is substantially justified, we look beyond the issue on which the petitioner prevailed to determine, from the totality of the circumstances, whether the government acted reasonably in causing the litigation or in taking a

> stance during the litigation.  In doing so, it is appropriate to consider the
> reasonable overall objectives of the government and the extent to which
> the alleged governmental misconduct departed from them.

*Hudson*, 991 F.2d at 139.  Unquestionably, Plaintiffs' most significant victories were Judge

Goodwin's decisions to vacate the 2007 NWP 21 on the grounds that the Corps' minimal cumulative

impact analysis was deficient under NEPA and the CWA, and his decision to grant an injunction

against the Green Valley permit.  However, Judge Goodwin rejected many of Plaintiffs' other

arguments advanced against the NWP 21.  *See, e.g.*, *Hurst*, 604 F. Supp. 2d at 881 (holding that the

Corps reasonably responded to public comments about the significant environmental impacts caused

by activities authorized by the NWP 21 permit); *id.* at 882-83 (holding that the scope of the Corps'

NEPA analysis was not arbitrary and capricious); *id.* at 897-98 (finding the Corps' individual

impacts determination under the CWA to be reasonable).  In addition, the Fourth Circuit reversed

Judge Goodwin's initial finding as to the 2002 NWP 21 that the Corps had not made the appropriate

minimal effects determinations under the CWA.  *See OVEC v. Bulen*, 429 F.3d 493, 499 (4th Cir.

2005) (noting that the Corps made all "required minimal-impact determinations [under § 404(e)]

before it issued NWP 21") (emphasis removed).  The Corps thus had a reasonable response to many

of the arguments against the 2002 and 2007 NWP 21 permits.

But the core of the analysis under NEPA and the CWA requires sound environmental impact

assessments.  Indeed, Plaintiffs, while heavily pounding the Corps with many arguments sufficient

to seek an invalidation of the NWP 21, primarily took issue with the adequacy of these assessments.

With that in mind, the Court does not believe that the Corps' position was substantially justified

under a totality of the circumstances.  Plaintiffs contended that the Corps failed to follow the proper

procedures in its overall consideration of cumulative impacts—again, one of the central exercises

it must undertake in issuing an NWP permit.  *See, e.g.*, Pls.' Amend. Compl. Declaratory and Inj.

Relief 17-20, No. 25.  On remand from the Fourth Circuit, Judge Goodwin found that, while the

Corps may have made all required determinations, those determinations were procedurally

inadequate under NEPA and the CWA.  The Corps simply provided no support for them.  This

position was unreasonable in light of the record that was before the district court and the authority

extensively detailed in Judge Goodwin's opinion.[5]  *See Hurst*, 604 F. Supp. 2d at 892-95, 900-01.

Accordingly, reaching to the heart of this matter, the Court cannot say that the Corps'

position was substantially justified in the litigation as a whole.  While it succeeded on some of its

defenses, it had no compelling answer for its inadequate environmental impact analysis.

### 4.    Special Circumstances

"Once a claimant is found eligible for attorneys' fees, the only remaining question is whether

---

[5] On July 15, 2011, the Corps submitted a Notice of Supplemental Authority directing the Court's attention to *Kentucky Riverkeeper, Inc. v. Midkiff*, No. 7:15-cv-181-DLB, 2011 U.S. Dist. LEXIS 76643 (E.D. Ky. July 14, 2011), a decision of the Eastern District of Kentucky recently rejecting similar NEPA and CWA challenges to the NWP 21 permit.  This decision, while helpful, is not dispositive.  As a general matter, the fact that another court may technically agree or disagree with the government cannot, by itself, establish whether its position was substantially justified.  *See United States v. Paisley*, 957 F.2d 1161, 1168 n. 4 (4th Cir. 1992).  In *Midkiff*, the court held that the Corps did not violate NEPA by excluding the effects of past NWP authorizations from its cumulative impacts analysis because compensatory mitigation would offset those effects.  *See id.* at *53-55.  Judge Goodwin, however, expressly found that there was no evidence in the record *before him* supporting the latter assertion.  Moreover, as to the similar CWA claims, the *Midkiff* court found that the Corps could rely on compensatory mitigation for individual projects when determining the cumulative impacts of all projects authorized under the permit.  *See id.* at *75-79.  But Judge Goodwin's opinion, and the authority he relied upon, clearly provides that the Corps cannot blindly assume that individual projects which are mitigated to insignificance, when added together, will not have a cumulative impact on the environment.  *See Hurst*, 604 F. Supp. 2d at 892-95, 896-901.  Additionally, the *Midkiff* decision relied very heavily on the Kentucky Stream Assessment Protocol for mitigating impacts in Eastern Kentucky—a protocol not used in West Virginia.  *See* 2011 U.S. Dist. LEXIS 76643, at *19, 66-68.  Thus, the arguments and record before the court in that case were not identical to those that Judge Goodwin faced.  For these reasons, the decision is distinguishable.

special circumstances exist that would render such an award unjust." *Grano v. Barry*, 783 F.2d 1104, 1111 (D.C. Cir. 1986).  As Plaintiffs correctly concede, if their victory can be characterized as merely "pyrrhic" then an award of fees would be inappropriate. *See Comm'rs Court of Medina Cty. v. United States*, 683 F.2d 435, 443 (D.C. Cir. 1982).  Plaintiffs' biggest achievement was an order invalidating the 2007 NWP 21.  The Corps thereafter suspended the permit's use throughout the Appalachian region.  This is a relatively substantial victory that could stand to have a positive environmental impact.  Therefore, because the Corps has offered no other argument that an award would be unjust, the Court finds that there are no special circumstances that could render it as such.

**B.   Reasonable Fees**

In calculating reasonable attorneys' fees, courts employ the "lodestar" approach. *See generally Johanssen v. Dist. No. 1–Pac. Coast Dist.*, 292 F.3d 159, 180-81 (4th Cir. 2002).  The lodestar amount is determined by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  The twelve "*Johnson*" factors must be considered by the court in making this determination:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*EEOC v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990) (internal quotations omitted); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the factors established in

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

### 1.      Reasonable Hours

"[I]t is the fee applicant's burden to establish the number of hours worked."  *Wolfe v. Greene*, No. 2:08-01023, 2010 U.S. Dist. LEXIS 102623, at *23 (S.D. W. Va. Sept. 24, 2010). Plaintiffs seek hours for work performed by three attorneys—James Hecker, Joseph Lovett, and Derek Teany.  The hours requested are as follows:

| Task | James Hecker | Joseph Lovett | Derek Teaney |
|---|---|---|---|
| Complaint | 11.50 | 30 | 0.00 |
| Corps' Motion to Dismiss | 5.75 | 1.25 | 0.00 |
| Amended Complaint | 1.00 | 1.50 | 0.00 |
| Settlement | 1.00 | 1.75 | 0.00 |
| Industry Motion to Intervene | 4.00 | 1.00 | 0.00 |
| Industry Motion to Dismiss | 11.75 | 0.50 | 0.00 |
| Corps' Motion for Judgment on the Pleadings | 18.75 | 0.75 | 0.00 |
| Corps' Motion to Limit Review | 5.50 | 1.00 | 0.00 |
| Rule 26(f) Report | 4.00 | 1.00 | 0.00 |
| Plaintiffs' Green Valley TRO/Preliminary Injunction Motion | 115.00 | 81.75 | 0.00 |
| Plaintiffs' Summary Judgment Motion | 180.00 | 28.50 | 0.00 |
| Plaintiffs' Motion to Amend | 14.00 | 2.00 | 0.00 |

| Order | | | |
|---|---|---|---|
| Plaintiffs' Motion to Clarify | 3.25 | 1.50 | 0.00 |
| Industry Motion to Reconsider | 4.25 | 0.00 | 0.00 |
| Plaintiffs' Motion to Enforce | 9.00 | 1.25 | 0.00 |
| First Appeal | 26.75 | 16.75 | 0.00 |
| Appeal Brief Preparation | 81.50 | 0.00 | 0.00 |
| Appeal Oral Argument | 28.25 | 0.00 | 0.00 |
| Rehearing | 18.00 | 0.00 | 0.00 |
| Plaintiffs' Renewed Motion for Summary Judgment | 62.50 | 6.75 | 0.00 |
| Comments on the 2007 NWP 21 | 84.25 | 0.00 | 0.00 |
| Supplemental Briefing | 11.50 | 0.00 | 0.00 |
| Supplemental Complaint | 8.00 | 3.00 | 0.50 |
| Plaintiffs' Motion for TRO/Preliminary Injunction Against North Rum Mining | 18.75 | 16.50 | 0.00 |
| Plaintiffs' Summary Judgment Motion for the 2007 NWP 21 | 62.75 | 3.00 | 2.20 |
| Corps' Motion for Clarification | 3.75 | 0.00 | 0.00 |
| Corps' Motion for Relief | 0.25 | 0.00 | 0.00 |
| Second Appeal | 12.25 | 0.00 | 0.00 |

| Corps' Suspension | 12.25 | 0.00 | 0.00 |
|---|---|---|---|
| Industry Motion Regarding Mootness and Vacatur | 12.25 | 0.00 | 0.00 |
| Drafting the Motion for Attorneys' Fees | 30.25 | 2.00 | 3.50 |
| **TOTAL** | **862.00** | **201.75** | **6.20** |

Pls.' Mem. Supp. Mot. Award Fees and Expenses 18-19, No. 249. While the Court need not "exhaustively address" each *Johnson* factor in assessing the reasonableness of the hours requested, *see EEOC v. CRST Van Expedited, Inc.*, No. 07-cv-95-LRR, 2010 U.S. Dist. LEXIS 11125, at *30 (N.D. Iowa Feb. 9, 2010), it briefly discusses the most pertinent factors.

Under the first *Johnson* factor, the fee applicant shoulders the burden of establishing the number of hours worked. *Hensley*, 461 U.S. at 437. "'[T]he number of hours must be reasonable and must represent the product of 'billing judgment.'" *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Hensley*, 461 U.S. at 437). The table above summarizes by category what are far more detailed individual affidavits and hour-by-hour explanations filed by each attorney. The Court has reviewed those affidavits, and is satisfied that Plaintiffs' counsel have described, with a reasonable degree of particularity, the tasks they completed. In their affidavits, the attorneys further adequately assure the Court that, after review of the billing records, they have concluded that the time billed is accurately reflective of the time actually spent on this case. The Court therefore finds that Plaintiffs have met their burden under the first factor.

The remaining *Johnson* factors, on balance, similarly support counsel's submitted hour requests. The issues presented in this litigation were for the most part exceedingly complex, and

counsel artfully and vigorously litigated this matter to a substantially successful conclusion. The issues litigated, moreover, required a high degree of knowledge in complex environmental matters, and the litigation itself lasted for over seven years. Indeed, counsel spent 1,069.95 total hours on this matter.[6] Similarly, the proceedings were often hastened by individual NWP 21 authorizations, forcing Plaintiffs to seek immediate injunctive relief on various occasions. Despite all of this, Plaintiffs obtained favorable results—invalidation of the 2007 NWP 21 and a permanent injunction against the Green Valley authorization. Considering all of these facts, and the Corps' failure to challenge the reasonableness of the affidavits' descriptions of the time spent on the litigation, the Court finds counsel's requested hours reasonable.

### 2.    Reasonable Rate

As with most issues in *OVEC*-related litigation, the parties also dispute the rate requested. Plaintiffs acknowledge that the EAJA caps the hourly rate for attorneys' fees at "$125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Plaintiffs thus request, in light of precedent suggesting that courts *should* make adjustments due to increases in inflation, *see, e.g.*, *Payne v. Sullivan*, 977 F.2d 900, 903 (4th Cir. 1992), that this Court adopt progressive "historical rates" adjusted for changes in the Consumer Price Index for All Urban Consumers (the "CPI-U"). Under this approach, the Court would divide the current CPI-U by the CPI-U at the time the current EAJA cap was set in March of 1996 (155.7), then multiply the resulting figure by the $125 cap.[7] The Corps, as a general matter, agrees that using

---

[6] Attorney James Hecker spent 862 total hours—representing over a whole month of his time—on this matter.

[7] Formula: [(Current CPI-U)/(1996 CPI-U)] x $125.

the CPI-U is an appropriate way to index the rates for cost of living changes. However, it contends that the Court should also adopt a locality adjustment to reflect the actual increases in CPI-U that have occurred in the locality where this litigation took place—Charleston, West Virginia.

Under Plaintiffs' method, the adjusted rates—along with the resulting fees—would be as follows:

| Year | Avg. CPI-U | Adjusted Rate | JH Hours Per Year | JL Hours Per Year | DT Hours Per Year | Fees Per year |
|---|---|---|---|---|---|---|
| 2003 | 184.000 | $147.72 | 23.75 | 33.75 | 0.00 | $8,493.90 |
| 2004 | 188.900 | $151.65 | 391.50 | 120.00 | 0.00 | $77,568.98 |
| 2005 | 195.300 | $156.79 | 120.25 | 16.75 | 0.00 | $21,480.23 |
| 2006 | 201.600 | $161.85 | 150.00 | 6.75 | 0.00 | $25,369.99 |
| 2007 | 207.342 | $166.46 | 103.00 | 22.50 | 2.70 | $21,340.17 |
| 2008 | 215.303 | $172.85 | 0.00 | 0.00 | 0.00 | $0.00 |
| 2009 | 214.537 | $172.24 | 33.25 | 0.00 | 0.00 | $5,726.98 |
| 2010-11 | 218.056* | $175.06 | 40.25 | 2.00 | 3.50 | $8,009.00 |
| **Totals** | | | *862.00* | *201.75* | *6.20* | *$167,989.25* |

Pls.' Mem. Supp. Mot. Award Fees and Expenses 20, No. 249.[8] *See Sullivan v. Sullivan*, 958 F.2d 574, 576 (4th Cir. 1992) (requiring the use of a broad cost-of-living index). The most recent average CPI-U is for 2010 (218.056). However, as Plaintiffs point out, the Ninth Circuit has adopted an adjusted rate of $175.06 for work completed in 2010. As that number is based on a more current average, and is lower than the rate that would prevail under an average CPI-U of 218.056, Plaintiffs

---

[8] CPI-U average values *available at* ftp://ftp.bls.gov/pub/special.requests/cpi/cpiai.txt.

advocate that the Court adopt it in calculating fees for work completed both in 2010 and 2011.  The Corps does not object.

Upon reviewing the authorities, the Court finds Plaintiffs' method reasonable.  The use of locality adjustments, while perhaps in some contexts desirable, *see Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988) (noting that "[t]he community in which the court sits is the appropriate starting point for selecting the proper rate"), fails to take into consideration Congress' prescription of a national cap on attorneys' fees under the EAJA.  28 U.S.C. § 2412(d)(2)(A). Congress set a uniform ceiling on attorneys' fees under the EAJA "with no variation by region or locality."  *See* Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part Two)*, 56 La. L. Rev. 1, 138-39 (1995) (arguing that cost-of-living adjustments under the EAJA should be governed by a national standard); *see also Hall v. Astrue*, No. 1:09-cv-0783-DML-LJM, 2010 U.S. Dist. LEXIS 134772, at *7-9 (S.D. Ind. Dec. 20, 2010) ("Using a national cost of living adjustment to the cap is consistent with Congress's selection of a *national base rate* . . . .") (emphasis added).  In any event, the Corps fails to offer evidence on the proper baseline for computing a Charleston locality adjustment.

Further supporting Plaintiffs' rate request are the *Johnson* factors.  Four of the *Johnson* factors are "particularly relevant" to the reasonable hourly rate inquiry: "the customary fee for like work; the experience, reputation and ability of the attorneys; attorneys' fees awards in similar cases; and the amount in controversy and the results obtained."  *Wolfe*, 2010 U.S. Dist. LEXIS 102623, at *13.  The Court points out that the attorneys primarily represent parties in complex environmental litigation, but do not typically bill their clients for the time spent working on a case.

### i.  Customary Fees

Attorney Hecker's affidavit represents that he has on one occasion in 2002 been paid a rate of $355 per hour for legal work and $284 per hour for travel time in assisting on an environmental issue for the Zuni Tribe in New Mexico.  *See* Pls.' Mot. Award Fees and Expenses, Hecker Decl., at 10, No. 248-4.  Additionally, he has received statutory fees from other environmental citizen suits in amounts ranging from $250 to $390 per hour.  *Id.* at 11.  Attorney Joseph Lovett similarly notes that he has received fee awards exceeding $300 per hour on numerous occasions, and that his current general hourly rate is $355 per hour.  *See id.* Lovett Decl., at 2-4, No. 248-5.  Finally, Attorney Teaney states that his hourly rate has ranged from $165 per hour in 2006 to $215 per hour in 2010. In support, he points to various fee award decisions calculating his fees at more than $200 per hour. *See id.* Teaney Decl., at 3-5, No. 248-6.

### ii.     Reputation of the Attorneys

As to the ninth *Johnson* factor, each attorneys' experience and reputation is not questioned. Attorney Hecker has over thirty years of legal experience.  *See id.* Hecker Decl., at 1-2, No. 248-4. He graduated from the University of Illinois College of Law in 1977, and is admitted to the Illinois and District of Columbia Bars.  *Id.* at 1.  He is also admitted to practice in the Supreme Court of the United States and various federal courts of appeal throughout the country.  *Id.*  He clerked for the Honorable Prentice Marshall of the Northern District of Illinois for two years, served as a partner at a Washington, D.C. firm for roughly four years, and has worked in his current position as a lawyer for Public Justice for over twenty years. *Id.* at 1-2.

Attorney Lovett graduated from the University of Pennsylvania Law School in 1995, and served for two years as a law clerk to the Honorable Charles Haden, II of the Southern District of West Virginia.  *Id.* Lovett Decl., at 1, No. 248-5. As a member of the West Virginia State Bar, he

founded the Appalachian Center for the Economy and the Environment in September of 2001. *Id.* His practice has focused solely on environmental policy, and he has litigated numerous cases in that endeavor.  Attorney Teaney, while participating for a relatively short period of time in this matter, is similarly well decorated.  He graduated from Northwestern School of Law of Lewis and Clark College in 2004 as Valedictorian of his law school class.  *Id.* Teany Decl., at 1, No. 248-6.  He is admitted to the West Virginia and Oregon State Bars, and after a two-year clerkship with the Honorable Rex Armstrong of the Oregon Court of Appeals, began working on environmental justice issues in West Virginia at the Appalachian Center for the Economy and the Environment.  *Id.* at 1-2. He has since remained there.

### iii.    Awards in Similar Cases and the Amount in Controversy

Counsel in this case have not submitted substantial evidence as to the prevailing local market rates.  However, this factor is less material in this case because, as noted, the EAJA caps the possible recovery rate at $125 per hour.  *See* 28 U.S.C. § 2412(d)(2)(A).  In any event, Plaintiffs provide evidence of fees that counsel have been awarded in other similar cases in the Southern District of West Virginia.  *See, e.g.*, *Sierra Club v. Powellton Coal Co., LLC*, No. 2:08-cv-2010, 2010 WL 4791590, at *4 (S.D. W. Va. Nov. 18, 2010) (approving a consent decree where Attorney Teany's fees were calculated using a rate of $215.00 per hour).  Accordingly, the Court finds some evidentiary support for counsel's individual requests.

Finally, the eighth *Johnson* factor suggests that the Court should consider, in setting a fee, the results obtained by the litigation.  The Court has extensively detailed Plaintiffs' victories in this Opinion.  Suffice to say here that Plaintiffs obtained injunctive relief against an individual authorization under the NWP 21 and a substantial victory as to the status of the 2007 NWP 21.

-26-

Specifically, Judge Goodwin ordered the Corps to vacate that permit, and although Plaintiffs advanced numerous arguments in pursuit of that goal, they ultimately obtained the result they sought.

### iv.       Conclusion

In light of the foregoing, the Court finds that the hourly rates requested by counsel are reasonable and do not fall short of the EAJA's cap.  Furthermore, that cap may be adjusted by the national CPI-U in the manner recommended by Plaintiffs.  In fact, absent the EAJA limitation on fee awards, counsel would likely be entitled to a much higher fee given their experience and the results they obtained in this matter.  The Corps simply has not provided any persuasive evidence to the contrary.

### 3.       Non-compensable Hours

The Corps next contends that Plaintiffs should not be awarded fees for various hours of work.  First, the Corps submits that it would be inappropriate to assess fees for phases of the litigation during which Plaintiffs filed motions against other, non-governmental parties—namely, the coal company intervenors.  Second, it claims that Plaintiffs should not be awarded fees for preparing comments in the administrative proceedings for the renewed 2007 NWP 21.

### i.       Fees for Litigation with Intervenors

The Corps argues that Plaintiffs are not entitled to fees spent on time responding to motions filed by the intervening coal associations which it did not support or oppose.  In that vein, the Corps relies upon two cases that hold essentially that the government should not be required to pay attorneys' fees for time spent litigating against private defendants when the government effectively takes no position.  *See Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631, 636 (5th Cir. 1986)

(modifying a fee award under the CWA to deny the plaintiffs' requested fees against the government for opposing an appeal by private intervenor-defendants)**;** *Love v. Reilly*, 924 F.2d 1492, 1495–96 (9th Cir. 1991) (modifying a fee award under the EAJA where the district court awarded fees for time spent opposing a motion to stay an injunction made by a private intervenor-defendant).

The *Avoyelles* and *Love* courts took somewhat of a formalistic view on the propriety of awarding fees for time spent litigating against intervenors. *See, e.g.*, *Love*, 924 F.2d at 1496.  In essence, considering general principles of equity, these courts reason that awarding fees against the government is "'manifestly unfair and contrary to historic fee-shifting principles'" where the government takes no position on an intervenor's motion. *See id.* at 1496 (quoting *Avoyelles*, 786 F.2d at 636).  Despite these decisions, the Court believes that answering this question requires a more detailed, and less rigid inquiry.

This litigation was exceedingly complex, and it spanned over seven years.  The intervening coal companies had a substantial stake in the issuance of individual authorizations under the NWP 21 permit—and, of course, on the overall validity of that permit.  Adopting the formalistic position advanced by the Corps ignores that its interest was, in many respects, aligned with that of these intervenors.  That is, it stood to benefit from the positions they took.  To that end, the Court finds persuasive the reasoning of other courts that have adopted a test that permits some inquiry into the pertinent facts and circumstances surrounding the case when making the instant determination. *See, e.g.*, *Am. Lung Assoc.  of Nassau-Suffolk v. Reilly*, 144 F.R.D. 622, 628–29 (E.D.N.Y. 1992) (discussing other authorities holding as much).  Under the EAJA, a *prevailing party* is entitled to fees against the government.  To prevail, of course, means that one may have to clear hurdles placed in his path by intervening parties.  These obstacles could conceivably benefit the government insofar

as they may advance its general litigation goals.  "[I]t would be inappropriate to deny fees to the

prevailing party simply because the [government] has the luxury of deferring to the intervenor's

request for relief."  *San Luis Valley Ecosystem Counsel v. U.S. Forest Svc.*, No. 04-cv-01071-MSK,

2009 U.S. Dist. LEXIS 27962, at *27-28 (D. Colo. March 23, 2009).

In this case, the Corps itself filed a memorandum opposing Plaintiffs' motion for a

preliminary injunction against the Green Valley NWP 21 authorization.  *See* Def.'s Mem. Opp. Pls.'

Mot. Prelim. Inj. 32, No. 45 ("[T]he United States respectfully requests that Plaintiffs' Motion for

Preliminary Injunction be denied.").  Moreover, the Corps formally opposed Plaintiffs' April 19,

2007 motion for a temporary restraining order and preliminary injunction against authorization

number 20050903 issued on March 2, 2007 to Apogee Coal Company, LLC ("Apogee Coal").  Its

interests were, on these matters, clearly aligned with the intervenors'.  Further, in the motions and

briefs filed by intervenors in the furtherance of which the Corps did not expressly join, the Court is

satisfied that its interests were advanced by the intevenors' conduct.[9]

The Court need not assess each argument that was made; it suffices to note that this

litigation, when stripped down to its core, was about invalidating the 2002 and 2007 NWP 21

permits, and individual authorizations made under those permits.  Plaintiffs maneuvered through the

proceedings, advancing their best arguments in pursuit of that goal.  *Both* the Corps and the coal

---

[9] Plaintiffs, in most instances, responded simultaneously to joint briefings by the
intervenors and the Corps.  Therefore, much of their attorneys' time simply cannot be separated
because it was spent litigating the same issues against both the intervenors and the Corps.  The
Court does find, however, that the Corps specifically refused to take a position on the initial
motion to intervene.  Plaintiffs spent five hours opposing this motion.  While the intervenors'
interests may have been aligned with the Corps' after they joined the litigation, the Court does
not necessarily believe it was mandatory for them to join in the first instance.  However, because
the Court deducts this five-hour request *infra* in Section II.B(4), it does not address it here.

mining company intervenors shared the similar end of opposing Plaintiffs' ultimate efforts.  Through

the final dismissed appeal, the defendants' goal was to maintain the validity of the NWP 21 and the

Corps has not made a "showing . . . that the cited time entries involved positions taken by the

[i]ntervenors that were adverse to [its interests]."  *San Luis Valley*, 2009 U.S. Dist. LEXIS 27962,

at *27-28.  Therefore, the Court finds that there is a sufficient basis to hold that the Corps' interests

were aligned with those of the intervenors for most of Plaintiffs' time requests, and for that reason,

Plaintiffs may seek attorneys' fees for time spent litigating against the intervening entities.

### ii.      Administrative Commenting

As noted, after the 2002 NWP 21 expired, the Corps issued the 2007 NWP 21.  During the

notice-and-comment period, Plaintiffs spent over eighty hours preparing opposing comments.  The

Corps contends that Plaintiffs are simply not entitled to fees for preparing supplemental comments

in an administrative rulemaking proceeding.

The EAJA authorizes the recovery of fees and expenses to the prevailing party in any civil

action brought against the United States.  28 U.S.C. § 2412(a)(1).  The Corps argues that the phrase

"civil action" used in this context implies that  parties who prevail against the United States can be

awarded fees only for those victories obtained in judicial proceedings.  Further, it contends that,

while the EAJA may allow for the recovery of fees incurred in proceedings before an agency in an

"adversary adjudication," 5 U.S.C. § 504(a)(1), an open-forum challenge to a permit decision is not

such a proceeding.  The Court agrees with the balance of the Corps' position.

It is a fundamental principle of statutory construction that "words of a statute will be given

their plain meaning absent ambiguity."  *Tex. Food Indus. Ass'n. v. U.S. Dep't of Agric.*, 81 F.3d 578,

582 (5th Cir. 1996).  The phrase "civil action" is not explicitly defined in the EAJA.  *See O'Brien*

-30-

*v. Moore*, 395 F.3d 499, 504 (4th Cir. 2005). However, inasmuch as the EAJA is a strict waiver of the sovereign immunity of the United States, this Court must construe its suit provisions narrowly. *See Clifton*, 755 F.2d at 1144. Generally, administrative proceedings may be considered part of the civil action for judicial review where they are "intimately tied to the resolution of the judicial action." *Sullivan v. Hudson*, 490 U.S. 877, 888, 892 (1989). The agency proceedings leading up to the adoption of the 2007 NWP 21 were not "intimately tied" to the resolution of this action as that phrase is defined by the Supreme Court in *Hudson*. *See id.* Indeed, Plaintiffs were only interested parties that participated in open forum discussions before the Corps. While the Corps' ultimate adoption of the 2007 NWP 21 may have affected Plaintiffs' litigation strategy in this case, its decision was not otherwise directed by a mandate from the Court. In *Hudson*, the Supreme Court held that proceedings undertaken pursuant to a *court-ordered* remand to the Social Security Administration were intimately tied in with a claim for benefits. *See* 490 U.S. at 887-88. Plaintiffs' attempts to persuade the Corps to adopt its position not to issue the NWP 21 via extrajudicial notice-and-comment procedures are not the same as efforts to litigate within the confines of the judicial proceedings challenging the permit.

Plaintiffs argue that the notice-and-comment proceedings relating to the advancement of the 2007 NWP 21 were so intimately tied to the resolution of their suit to invalidate that permit because the Corps took the position that judicial review of NWPs should be limited to the administrative record. Consequently, Plaintiffs assert that they needed to comment in order to place their objections on the record in the event the Corps' motion was granted. Morever, they claim that they relied on the arguments prepared in opposition to the permit in preparing their follow-up motion for summary judgment. Plaintiffs' arguments miss the mark.

First, while the Corps did originally take the position that review should be limited to the administrative record, Judge Goodwin denied its request.  Further, the fact that Plaintiffs could achieve a marginal benefit by recycling their arguments from a different proceeding and strategically supplementing the record to support a subsequent action cannot imply that they are entitled to attorneys' fees for that work.  Surely Plaintiffs would not assert, for example, that they could request attorneys' fees for time spent creating briefing templates used in previous cases merely because the issues might overlap in a subsequent case.

In contrast to *Hudson*, the administrative proceedings conducted by the Corps were not mandated by the Court, and were entirely separate from the instant litigation.  For these reasons, Plaintiffs are not entitled to recover the 84.25 hours requested for preparing comments against the issuance of the 2007 NWP 21.

### 4.      Reductions for Unsuccessful Claims

Finally, the Corps argues that the Court must make reductions for time spent on claims that were unsuccessful.  The product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be excessive where the "plaintiff has achieved only partial or limited success."  *See Brodziak v. Runyon*, 145 F.3d 194, 196-97 (4th Cir. 1998) (internal quotation marks and citation omitted).  After determining the lodestar figure, the court may reduce an award to account for limited success.  *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009).  To do as much, the court must first subtract fees incurred for unsuccessful, unrelated claims, and then award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.  *Id.* (discussing *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008)); *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 675 (E.D. Va. 2004) (noting that the

-32-

"degree of success obtained by the plaintiff is the most critical factor in determining the reasonableness of a fee award") (internal quotation marks omitted); *Signature Flight Support Corp. v. Landow Aviation, LP*, No: 1:08-cv-955, 2010 U.S. Dist. LEXIS 77064, at *36-37 (E.D. Va. July 30, 2010) (citing *Hensley*, 461 U.S. at 436). In determining the appropriate reduction for limited success, courts must consider "whether the claims on which the plaintiff prevailed are related to those on which he did not." *Brodziak*, 145 F.3d at 197. Time spent on unsuccessful claims is related to time spent on successful claims for purposes of determining a reasonable fee if the issues litigated involve a "common core of facts" or related legal theories. *Hensley*, 461 U.S. at 435.

The Court believes that a significant reduction is appropriate to reflect the fact that Plaintiffs were unsuccessful in their challenges to the 2002 NWP 21. Despite Plaintiffs' claim that the subsequent 2007 NWP 21 was nearly identical to the 2002 NWP 21, they did not obtain substantial judicial relief on their challenges to the latter. To the contrary, the Fourth Circuit rejected many of the arguments advanced against that permit. On remand, Plaintiffs asserted different arguments, but before they could obtain a favorable judgment, the 2002 NWP 21 expired. While similar in substance to the 2007 NWP 21, the 2002 NWP 21 was a different permit based on a different administrative record. It is therefore the opinion of this Court, after extensive review, that Plaintiffs' efforts against the 2002 NWP 21 were distinct from their efforts against the 2007 NWP 21. *See id*.[10]

The Court further finds distinguishable Plaintiffs' efforts in attempting to secure preliminary injunctive relief against the Green Valley and Apogee Coal individual NWP 21 authorizations. The

---

[10] Again, Plaintiffs argue that they reused many of their primary arguments against the 2007 NWP 21. As noted, however, achievement of economies of scale in litigation may be possible in many cases, but this does not mean that prevailing parties should be awarded fees on that basis.

-33-

facts underlying individual authorizations under the national permits are not so similar that the Court cannot reasonably subtract hours for unsuccessful claims.  In that vein, the Court notes that, while Plaintiffs were not prevailing parties against the 2002 NWP 21, they did obtain a permanent injunction against the Green Valley authorization which has not been overturned.  However, Plaintiffs did not obtain injunctive relief against the Apogee Coal permit because the company had already begun substantial mining activities, mooting the motion for relief.

Consequently, the Court finds the following reductions appropriate.  First, the Court reduces the total hours requested by an additional 612 hours to primarily reflect Plaintiffs' failure to succeed against the 2002 NWP 21 and its request for injunctive relief against the individual authorization made to Apogee Coal.  The Court, of course, awards all of the time spent litigating in pursuit of the invalidation of the 2007 NWP 21.[11]  Furthermore, the Court believes it reasonable to permit recovery for hours spent preparing the Rule 26(f) report as the report set the parties' general direction for the rest of the litigation.  The Court also believes that counsel is entitled to recover for hours spent in securing permanent injunctive relief against the Green Valley authorization inasmuch as that injunction was never overturned or reversed.  Further, the Court will also award 16 hours for the time Plaintiffs spent on their motion to amend Judge Goodwin's July 8, 2004 order to clarify whether the Green Valley authorization was permanently enjoined.

Finally, the Corps argues that the Court should deduct fees requested for arguments that Judge Goodwin both implicitly and expressly rejected in issuing the order vacating the 2007 NWP 21.  The Court disagrees.  The final order entered in this matter constituted "substantial relief," and

_____

[11] This includes time spent on Plaintiffs' supplemental complaint, their motion for summary judgment against the 2007 NWP 21, their motions for clarification and relief, and all time spent in the remainder of the case.

Plaintiffs "should not have [their] attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440. As a result, the Court need not make a further percentage reduction in fees for work spent litigating against the 2007 NWP 21 based on the degree of success obtained.

### 5. Final Calculations

In accordance with the foregoing discussion, the Court will award fees in the following manner with all appropriate deductions incorporated:

| Year | Avg. CPI-U | Adjusted Rate | JH Hours Per Year | JL Hours Per Year | DT Hours Per Year | Fees Per year |
|------|-----------|---------------|-------------------|-------------------|-------------------|---------------|
| 2003 | 184.000 | $147.72 | 0 | 0 | 0.00 | $0.00 |
| 2004 | 188.900 | $151.65 | 133 | 84.75 | 0.00 | $33,021.79 |
| 2005 | 195.300 | $156.79 | 0 | 0 | 0.00 | $0.00 |
| 2006 | 201.600 | $161.86 | 0 | 0 | 0.00 | $0.00 |
| 2007 | 207.342 | $166.46 | 68.25 | 6 | 2.70 | $12,809.10 |
| 2008 | 215.303 | $172.85 | 0.00 | 0.00 | 0.00 | $0.00 |
| 2009 | 214.537 | $172.24 | 33.25 | 0.00 | 0.00 | $5,726.98 |
| 2010-11 | 217.535 | $175.06 | 40.25 | 2.00 | 3.50 | $8,009.00 |
| **Totals** | | | *274.75* | *92.75* | *6.20* | *$59,566.87* |

Counsel also requests compensation for expenses incurred during the litigation in an amount of $5,196.32. Under the EAJA, compensable expenses include all "costs that are ordinarily billed to a client." *See Int'l Woodworkers of Am. v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1986). While the Corps does not contest this request, the Court will award one-third of the amount to approximately reflect Plaintiffs' relative success in this matter. The Court thus awards Plaintiffs'

counsel fees and expenses in the total amount of $61,298.98.[12]

## III.    Conclusion

For the reasons detailed in this Opinion, the Court **FINDS** Plaintiffs eligible for an award of fees and expenses under the EAJA.  Therefore, the Court hereby **GRANTS** in part and **DENIES** in part Plaintiffs' motion for an award of fees and expenses [Doc. 248] and **ORDERS** the Corps to pay Plaintiffs' counsel fees and expenses in the amount of $61,298.98.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        August 11, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[12] The Court notes that Attorney Hecker's individual time sheets suggest that he worked more hours and incurred more expenses than those which are requested in the tables and paragraphs accompanying Plaintiffs' memorandum in support of an award of fees.  The Court assumes that the values in the latter table reflect the only hours for which compensation is sought.  Similarly, the motion for fees and expenses appears to exclude $827.02 in travel expenses stated in Attorney Hecker's affidavit which were incurred from 2004 to 2005.  The Court assumes that Plaintiffs do not seek compensation for these expenses.